JAMES O'GARA, respondent, v. THOS. M. LOWRY, appellant.

SALE OF PERSONAL PROPERTY — *Change of possession — Immediate delivery.* — In determining whether a sale of personal property is valid under the statute of frauds, as against creditors of the vendor, the jury should consider the facts connected with and surrounding the delivery of the property. But the fact that the property was sold on one day, and not delivered until the next, does not render the sale void, if delivery was impossible on the day of sale; and it is properly a question for the jury to answer, whether the property was so situated, and the parties were so located at the time of sale, that instant delivery could not be made, and whether it was made as soon thereafter as practicable.

SAME — *Continued possession — Employment of vendor.* — The fact that the vendee of a horse and wagon employed the brother of the vendor to drive it, and, subsequently, for a short time, employed the vendor, does not show such a want of continued possession in the vendee as to render the sale void.

*Appeal from Second District, Silver Bow County.*

ROBINSON & STAPLETON, for appellant.

The court erred in not giving defendant's third instruction asked and refused (which see, page 13), and in not

granting defendant's motion for non-suit (see p. 13, also, of record), which both involve the same question, to wit: the facts being undisputed, the want of delivery of possession is a question of law alone for the court to determine. See sec. 169, Statute of Frauds; R. S. p. 436; and see Evidence, Record, pp. 22–25, etc.

The evidence shows that the sale was made July 21st, and the delivery was not till July 22d, and the property was in the immediate vicinity of the parties to the sale. See evidence of plaintiff, pp. 22–25; *Cheney* v. *Palmer,* 6 Cal. 119; *Woods* v. *Bugby,* 29 Cal. 479; Bump on Fraud. Conv. 72, 168, 171; *Edgell* v. *Dart,* 9 N. Y. 216; *Sturtevant* v. *Ballard,* 9 N. Y. 342; *Hamilton* v. *Russell,* 1 Cranch, 418.

There was no continuity of possession as required by law. See evidence of plaintiff, pp. 23, 24, and of Cutler, pp. 24, 25, and of Hedburg, pp. 25, 26; and evidence, pp. 27–31, 33; *Watson* v. *Rogers,* 53 N. Y. 401; *Bacon* v. *Scannell,* 9 N. Y. 271; *Brown* v. *Gorham,* 4 N. Y. 289; *Stuart* v. *Scannell,* 8 N. Y. 80.

The evidence was not sufficient to justify the verdict. See Specification of Errors, p. 14, and authorities above cited.

RANDOLPH & DE WITT, for respondent.

The only question presented by the different exceptions of the appellant is whether there was an immediate delivery followed by an actual and continued change of possession of the property sold from Cutler to O'Gara, respondent. R. S. Mont. p. 436, sec. 169.

The authorities cited by appellant (8 Cal. 80; 29 id. 479; 53 id. 401; 1 Cranch, 418) decide only that, under the statute, immediate delivery and continued change of possession cannot be excused. This we admit. But these authorities do not define what such delivery and possession are. That is a fact to be determined from the circumstances.

The authorities cited by appellant (6 Cal. 119, and Bump on Fraudulent Conveyances, pp. 72, 168 and 171) decide only that, if there be no dispute as to the facts, and the law declares such facts to be a fraud, it is a question of law for the court, and not of fact for the jury. That is to say, if the facts *admit* that there was no immediate delivery and actual and continued change of possession, then there was fraud in law. But, in this case, the facts do not admit this; but, on the contrary, as disclosed by the evidence (Transcript, pp. 22–33), constitute a proper delivery and possession under the law. See *Lay* v. *Neville*, 25 Cal. 545, 552; *Godchaux* v. *Mulford*, 26 Cal. 316; *Ford* v. *Chambers*, 28 Cal. 13.

As to employment of vendor as clerk by vendee, as evidence of fraud, 4 Cal. 289; 9 id. 271, cited by appellant, are overruled in *Stevens* v. *Irwin*, 15 Cal. 503; *Godchaux* v. *Mulford*, 26 Cal. 323.

An act of this kind is not such conclusive evidence of fraud that a court may take the case from a jury and decide the question of fraud as one of law. See cases last cited, and *Ford* v. *Chambers*, 28 Cal. 13.

The construction of the statute (R. S. Mont. p. 436, sec. 159) must be reasonable, and must take into consideration the parties, the place of sale (in this instance the city of Butte), the situation of the property (in this instance the horses were running on the range seven to ten miles from Butte), the kind of property sold, and all the surrounding circumstances. *Stevens* v. *Irwin*, 15 Cal. 503; *Lay* v. *Neville*, 25 Cal. 545, 552.

The delivery from Cutler to O'Gara was as immediate as could possibly be made (see evidence in transcript; *Lay* v. *Neville*, 25 Cal. 552); and the continuous change of possession was such "as a prudent *bona fide* purchaser would make." Same case and page.

Whether or not, as a matter of fact, there was an immediate delivery and continued change of possession, was for the jury; and if the court had given defendant's

instruction No. 3 (Trans. p. 13), it would have taken a question of fact from the jury, and determined just how many hours or minutes, after sale, were necessary to constitute an immediate delivery, without regard to the circumstances of place, parties, or kind of property. The instruction was properly refused. See, also, appellant's brief, and authorities there cited, in *Kleinschmidt* v. *McAndrews*, 4 Mont. 8.

COBURN, J. This is an action for claim and delivery of four horses, a wagon, a whip, two sets of harness and eight cords of wood. The plaintiff alleges that the defendant unlawfully took, on the 13th of September, 1882, this property from the possession of the plaintiff; that demand was made of defendant on the 18th of September, and a refusal on his part to deliver the same. The defendant justfied as the sheriff of Silver Bow county, alleging that, at the time named, the property was owned and possessed by Charles R. Cutler; that Cutler was then indebted to Foster and Murphy in the sum of $416.24; that by virtue of a writ of attachment in their favor placed in his hands, he, as sheriff, on September 13, 1882, seized and took into possession the property described in the complaint, except the eight cords of wood, which he denied taking; that afterwards, and before the beginning of this suit, they obtained a judgment against said Cutler in said suit, on which an execution was issued, and the property, except said wood, was sold by him, as sheriff, to satisfy the same, and that he did not convert any wood whatever. The plaintiff replied that, being a resident of Silver Bow county, on or about the 14th of September, 1882, and after the levy of the said attachment, the plaintiff, under oath, claimed the property described in the complaint, served a written notice upon the defendant, and made a demand for the return of the property, under oath. And that this action was commenced after expiration of ten days therefrom. The plaintiff

claimed to be the owner of the property attached, as a purchaser from Cutler on the 21st of July, 1882, and insisted that the delivery was as immediate as could be made, inasmuch as the same was in part horses, running on the range, some seven or ten miles from the place of sale; and that the other property was some seven or eight miles from Butte, at Cutler's residence, and near to the range where the horses were grazing; and that, hence, it was impracticable and impossible for Cutler, the vendor, to make an instantaneous delivery of the property at the time of the sale in Butte, to the purchaser, the plaintiff. The cause was tried by a jury, and a verdict was returned for the plaintiff for the sum of $550.

At the close of the plaintiff's testimony, the defendant moved the court for a non-suit, for the following reasons:

1st. That Foster and Murphy, named in the pleadings, are shown by the pleadings to have been creditors of the said Culter, the vendor of the property, at the time of the sale, and that it was proven by plaintiff that the sale from Culter to him was made on July 21, 1882, between 11 o'clock in the forenoon and 2 o'clock in the afternoon, and a delivery of possession was not made till the 22d of the month, and, therefore, no immediate delivery of possession, sufficient to satisfy the statute of frauds in such case; and said pretended sale was, therefore, void as against said Foster and Murphy.

This motion the court overruled, to which the defendant excepted, and this is assigned as the first error, by the appellant.

The second error assigned is: "That the court erred in refusing to give defendant's instruction number 3, which is as follows: 'The jury are instructed that if they find from the evidence that Cutler sold said property to O'Gara, on the 21st day of July, 1882, and did not deliver possession thereof until July 22, 1882, then they will find there was no immediate delivery of possession of said property, and said sale is void as against Foster

and Murphy, and the jury will find for the defendant.'
And which said instruction defendant asked the court to
give, and which was refused, and said refusal was error,
for the reason that the evidence shows that the pretended
sale was made on the 21st day of July, 1882, and no de-
livery of the property was effected till July 22d, and no
such immediate delivery of possession as would take the
case out of the statute of frauds, and the sale was void
as to Foster and Murphy, who are shown to have been
creditors of Cutler, the vendor, at the time. That said
instruction was correct, and should have been given."

The third error assigned is: "That the evidence was
insufficient to justify the verdict, in this: The evidence
shows that there was no continuity of possession by
plaintiff after the sale and pretended delivery of posses-
sion; that it shows that on the 22d of July, 1882, when
plaintiff claims to have taken possession, and used the
team that day, he then employed David Cutler to drive,
and who continued to drive the team thereafter; and said
David Cutler had been driving it after the 22d, and that
Charles Cutler, the vendor, after the 22d, drove the team
for a week or more; and the evidence shows no continu-
ity of possession by plaintiff, and the sale for such rea-
sons was void as to Foster and Murphy, who are shown
to have been creditors of Charles Cutler, the vendor."

The fourth error assigned is: "That the verdict was
contrary to law, for the same reason as shown in the
third assignment of errors."

Thus it will be seen that the question arising out of the
time and circumstances of the delivery of the property is
the main one in this case. In other words, was there a
legal delivery of the property by Cutler to O'Gara, on the
day after the sale, rendering the levy of the attachment
of the creditors, Foster and Murphy, void?

The statute of frauds provides that every sale of goods
and chattels, unless the same be accompanied by the im-
mediate delivery, and followed by an actual and contin-

ued change of possession of the thing sold, shall be conclusive evidence of fraud as against the creditors of the vendor, as subsequent purchasers in good faith.

The appellant takes the position that the phrase, "immediate delivery and change of possession," means the instantaneous delivery and change; that the sale, delivery and change must be simultaneous acts, allowing no lapse of time to intervene between the sale and the delivery and change of possession. And upon this theory the third instruction, which was refused, is by him held to be correct, while the appellee insists that the immediate delivery and change are such a delivery and change as the circumstances permitted, taking into consideration the nature of the property, its situation at the time of the sale, the position or location of the parties at that time, their distance from the property sold, and the acts necessary to be done to complete the collection of the property, the traveling to it, and placing it in a position to be put in the possession of the vendee. What might be regarded as an immediate delivery of one kind of property might not be regarded as an immediate delivery of another kind. Small articles in the possession of the vendor at the place of sale are capable of instantaneous delivery, while large articles, at a distance from the place of sale, necessarily will not admit of instant delivery. This has been well stated in *Lay* v. *Neville*, 25 Cal. 553: " It is not intended by the fifteenth section of the statute of frauds to make a sale void, as against the creditors and purchasers of the vendor, unless the vendee shall perform in every case what might, in some cases, be an impossibility. It was intended that the vendee should immediately take, and continuously hold, the possession of the goods purchased, in the manner, and accompanied by such plain acts of possession, control and ownership, as a prudent, *bona fide* purchaser would do, in the exercise of his rights over the property, so that all persons might have notice that he owned and had possession of

the property. The acts that will constitute a delivery
will vary in the different classes of cases, and will depend
very much upon the character and quantity of the prop-
erty sold, as well as the circumstances of each particular
case. The same acts are not necessary to make a good
delivery of a ponderous article, like a block of gran-
ite or a stack of hay, as would be required in an
article of small bulk, as a parcel of bullion." The
same point is illustrated in *Chaffin* v. *Doub,* 14 Cal.
384. The property mortgaged consisted of hay lying
in swaths, winrows and stacks over three large fields
of the mortgagor, and the possession of it had been
given by constructive delivery to the mortgagees, who,
from thence, continued to work on the hay during eight
days, when it was attached for the vendor's debts. The
court held that "if an actual and immediate delivery
were construed to mean a removal immediately from the
premises, the requirement of the statute would, in such
cases, be impossible of performance, and that time was
necessarily required to gather and remove the hay." The
court below, in this case, gave the following instruction
to the jury on this point: "In determining what, under
the law, is an immediate delivery of the property sold,
you are to consider the surrounding circumstances, the
nature of the property to be delivered, its situation, and
the difficulty or ease of making delivery, and whether
the delivery was made in the ordinary way that men
of prudence and business would make delivery, if they
were acting in good faith, and with the desire and inten-
tion to carry out their contract of sale according to law."
And the court further instructed the jury, that "if you
determine from the evidence that when Cutler sold to
O'Gara there was an immediate delivery of the property
mentioned in the complaint, from Cutler to O'Gara, and
an actual and continued change of possession, you must
find for the plaintiff."

We are of opinion that these instructions are correct,

and that it was proper for the jury to consider the facts connected with and surrounding the delivery of the property to determine whether the same was valid and made in compliance with the statute of frauds. The fact that the property was sold one day to the plaintiff, and not delivered until the next day, does not render the sale void, if it appears in evidence that the delivery was impossible on the day of sale; and it is properly a question for the jury to answer, whether the property was so situated, and the parties were so located at the time of the making of the sale, that instant delivery could not be made, and whether it was made as soon thereafter as practicable. And the same may be said as to the fact of the continued change of possession. All the transactions of business in the completion of sales by delivery cannot be completed in a moment or in an hour. The more important ones require time, and are accompanied, like all other human affairs, with delays, and are obstructed by necessary or unexpected obstacles. And these must all be considered before the sale is declared fraudulent and void. A reasonable time, consistent with all the circumstances and possibilities of delivery, unaccompanied by any avoidable delays, is given for an immediate delivery. It appears in evidence in this case that the sale was made in the city of Butte on the 21st of July, between 10 o'clock A. M. and 2 o'clock P. M.; that the property was from seven to ten miles out in the country; the wagon, harness, etc., at the house of Cutler, the vendor, about seven or eight miles from Butte, and the horses were on the range, over which they grazed, at distances from two to three hundred yards to three or four miles from the house of Cutler. That after the sale was made, the plaintiff and Cutler went from Butte on the afternoon of the 21st of July, and arrived at his house about 6 o'clock in the evening. That the property was not delivered then. That next morning, the 22d of July, at 6 o'clock, Cutler went out and brought in

the horses at 8 o'clock in the forenoon from the range, and then the property was all delivered to the plaintiff, O'Gara, who then took possession of it. The horses were harnessed and driven away with the wagon and other property, except the wood, to Bull Run, two miles away. The wood was hauled away subsequently. The plaintiff testified further, that the team was driven by David Cutler, the brother of the vendor, Charles Cutler, both prior and subsequent to the sale. He continued to drive it in the employ of O'Gara, the plaintiff, for several weeks after the sale. That his brother, Charles Cutler, the vendor, drove the team one week in August, after the sale, being employed by the plaintiff. These facts are relied on by the respondent as showing that there was no continuity of possession in the plaintiff. The fact that the brother of the vendor drove the team, both before and after the sale, cannot be regarded as conclusive evidence against the continuity of possession in the purchaser, and was properly not so regarded by the court below. The jury had a right to consider the employment of the vendor's brother as a teamster by the purchaser as an act done in good faith. The mere facts of his relationship and former employment were circumstances which could have little weight in determining the good or bad faith of the transaction of sale. The fact of the vendor driving the team one week in August after the sale is not conclusive evidence of fraud, and does not break the continuity of possession in the purchaser. The question for the jury was, had there been an actual and continued change of possession; and in settling this it was proper for them to consider these facts as to driving, control and management of the team, taken with all the other facts connected with the sale appearing in the evidence.

The case of *Stevens* v. *Irwin,* 15 Cal. 507, illustrates this point. The court say: "The word 'actual' was designed to exclude the idea of a mere formal change of

possession, and the word 'continued' to exclude the idea of a mere temporary change. But it never was the design of the statute to give such extension of meaning to this phrase, 'continued change of possession" as to require, upon penalty of a forfeiture of the goods, that the vendor should never have any control over or use of them. This construction, if made without exception, would lead to very unjust and very absurd results. A vendor could never become trustee of the goods without their being forfeited or liable for his debts. If a livery stable keeper hired a horse to the original vendor, it would be liable for his debts; or if a boarder came into a room, the furniture might be liable for his debts if he once owned it. The 'continued change of possession,' then, does not mean a continuance, for all time, of the possession, or a perpetual exclusion of all use or control of the property by the original owner."

In *Godchaux* v. *Mulford*, 26 Cal. 325, it is said that: " A hired clerk or salesman is no more in the possession of the goods of his employer than a hired laborer is in the possession of the farm on which he is employed to work. The employment of the vendor in a subordinate capacity is colorable only, and not conclusive upon the question as to whether there has been an immediate delivery and an actual change of the possession. He cannot be allowed to remain in the apparently sole and exclusive possession of the goods after the sale, for that would be inconsistent with such an open and notorious delivery and actual change as the statute exacts in order to exclude from the transaction the idea of fraud. But if it be apparent to all the world that he has ceased to be the owner, and that another has acquired and openly occupied that position; that he has ceased to be the principal in the charge and management of the concern and become only a subordinate or clerk, the reason of the rule announced in the statute is satisfied."

We, therefore, under this view of the case, hold that the seizure of the property of the plaintiff, under the attachment, was illegal.

The judgment is affirmed.