O. W. PERRY CO., Appellant, *v.* MULLEN, Sheriff, Respondent.

(No. 6,236.)

(Submitted January 13, 1928. Decided February 6, 1928.)

[263 Pac. 976.]

*Conversion—Sales—Grain — Statute of Frauds — Constructive Delivery—Insufficiency.*

Sales—Personal Property—Statute of Frauds—Purpose of Enactment.
1. The object of the statute of frauds (sec. 8604, Rev. Codes 1921) is to require notice to the world of the transfer of personal property in order that creditors and purchasers or encumbrancers, in good faith, may be protected, and to prevent fraud; it requires surrender of control over the property by the vendor and the assumption of possession by the vendee, mere words being insufficient to constitute delivery.

Same—Delivery Indispensable—Change of Possession must be Open and Continued.
2. To be proof against attack by creditors or subsequent bona fide purchasers and encumbrancers, upon sale of personal property, delivery thereof is indispensable; the vendee must take actual, open and unequivocal possession thereof, carrying with it the usual marks and indications of ownership by the vendee; the change of possession must be so open and so long continued as to indicate to the world that there has been a change of title.

Same—Immediate Possession and Actual Delivery—Question Dependent upon Character of Article Sold.
3. Whether in a given case of transfer of personal property there has been an immediate delivery and actual possession in the vendee of the thing sold depends, in a measure, upon the character of the article sold, the nature of the transaction, the position of the parties and the intended use of the property, each case being dependent upon its own facts.

Same—When Constructive Delivery Insufficient.
4. Where the nature of personal property sold and the position of the parties render it practicable, actual delivery must be made; where such delivery can reasonably be made, a symbolical or constructive delivery cannot take its place.

Same—Sale of Wheat—Delivery of Key to Granary Held Insufficient Under Circumstances of Case.
5. Under the above rules, *held*, in an action for the conversion of a quantity of wheat, that where a debtor delivered to his creditor the key to his granary under an agreement that the latter should take the wheat in payment of a promissory note

2. Change of possession sufficient as against creditors, see note in 97 **Am. Dec.** 340. See, also, 12 **Cal. Jur.** 996; 12 **R. C. L.** 562.
4. See 12 **Cal. Jur.** 997.

held by him, the note being delivered to the debtor, and thereafter the vendee for eight months made no effort to take possession of the grain in the granary located within the inclosure of the debtor, and nothing was done to apprise the public of a change of possession, the court properly found in favor of defendant sheriff who seized the grain and sold it at the instance of an attaching creditor of the vendor, the pretended sale having been void under the statute of frauds above.

[1–3] Fraudulent Conveyances, 27 C. J., sec. 297, p. 577, n. 57, p. 578, n. 59; sec. 301, p. 579, n. 74; sec. 305, p. 581, n. 89. Sales, 35 Cyc., p. 303, n. 28.

[4] Fraudulent Conveyances, 27 C. J., sec. 309, p. 584, n. 2.

[5] Fraudulent Conveyances, 27 C. J., sec. 312, p. 586, n. 17.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by the O. W. Perry Company against Thomas Mullen, Sheriff of Powell County, Montana. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. W. E. Keeley,* for Appellant, submitted a brief and argued the cause orally.

Citing: *Western Mining Supply Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214, 105 Pac. 732; *O'Gara* v. *Lowery,* 5 Mont. 427, 5 Pac. 583; *Rocheleau* v. *Boyle,* 11 Mont. 451, 28 Pac. 872; *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707; *Cady* v. *Zimmerman,* 20 Mont. 225, 50 Pac. 553; *Gallick* v. *Bordeaux,* 22 Mont. 470, 56 Pac. 961; *Yank* v. *Bordeaux,* 23 Mont. 205, 75 Am. St. Rep. 522, 58 Pac. 42; *Tomcheck* v. *Maryland Casualty Co.,* 75 Mont. 557, 244 Pac. 506; *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947.

*Mr. S. P. Wilson* and *Mr. K. W. MacPherson,* for Respondent, submitted a brief; *Mr. MacPherson* argued the cause orally.

Citing: *Puckett* v. *Hopkins,* 63 Mont. 137, 206 Pac. 422; *Ross* v. *Thomas,* 24 Cal. App. 734, 142 Pac. 102; *Story* v. *Cordell,* 13 Mont. 204, 33 Pac. 6; *Martin* v. *Thompson,* 63 Cal.

3; *Guthrie* v. *Carney,* 19 Cal. App. 144, 124 Pac. 1045; *Center*
v. *Kelton,* 20 Cal. App. 611, 129 Pac. 960; *Callender* v. *Mc-
Leod,* 74 Cal. 376, 16 Pac. 194; *Crocker* v. *Cunningham,* 122
Cal. 547, 55 Pac. 404.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

This action was brought by the plaintiff against the defend-
ant for the conversion of 420 bushels of wheat, of the stipu-
lated value of $320. The court, sitting without a jury, found
for the defendant, and plaintiff appealed.

The wheat was raised by Annie E. Lawrence upon a home-
stead owned jointly by herself and her husband, William
Lawrence. She was in possession of the homestead, her hus-
band was not. As soon as the crop was put in she moved
from the homestead to another farm about ten miles away.
She returned to the homestead for threshing and that being
completed, placed a chain and lock on the granary wherein the
grain was stored and returned to the other farm. The home-
stead was fenced and as she left she fastened the gate, where
the road enters the homestead inclosure, with wire. The gran-
ary was upon a hill some 150 or 200 yards from the other
buildings on the place and a quarter of a mile from the gate.

She was owing O. W. Perry, a merchant at Ovando, a note
for $300 and interest, and to pay it offered to turn over the
wheat at the granary upon the homestead. This was agreeable
to him. She then gave Mr. Perry the key to the granary
(she had but one key) and he delivered the note to her. She
intended to sell and he to buy the grain. This was on Novem-
ber 15, 1923. The Lawrence homestead is five and a half miles
from Ovando. After the receipt of the key from Mrs. Law-
rence, Perry retained it for two or three weeks and then gave
it to George Lawrence, a son of Mrs. Lawrence, whom he
hired to haul the wheat to Drummond. The arrangement was
to wait for snow and when the sleighing was good to haul the
wheat. But there was no good sleighing that winter and the

wheat was not hauled.  Then the price of wheat declined and nothing further was done about it.  Perry, from the time he received the key until the day of the sheriff's sale, did not go to the granary nor to the Lawrence homestead.

In the meantime Perry organized a corporation, the O. W. Perry Company, the plaintiff, to which concern he alleges he sold the wheat.  For the purposes of this decision we shall assume that he did transfer his interest therein to the plaintiff.  On August 15, 1924, in a suit wherein Cotter & Coughlin were plaintiffs and William Lawrence, George L. Lawrence and Annie E. Lawrence were defendants, the sheriff, under a writ of attachment, levied upon and attached the wheat in the granary and placed a keeper in charge.  On October 3, 1924, pursuant to an order of court dated September 23, 1924, the sheriff sold the attached property, at public auction, to the attaching creditors.  After attachment and before the sale, the plaintiff served upon the sheriff its third-party claim, wherein it claimed to be the owner of the wheat and demanded the release thereof from attachment.  The plaintiff's claim having been disregarded, and the property sold as above mentioned, in November, 1925, the plaintiff began this suit.

The determinative question is, Did the plaintiff, or O. W. Perry, its predecessor in interest, ever have such possession of the wheat in question as to entitle plaintiff to maintain its claim to the wheat against the attaching creditors of the vendor?

The defendant relies upon section 8604, Revised Codes 1921, [1-3] which provides in substance that every transfer of personal property is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual or continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for

the benefit of others than himself, and against purchasers or encumbrancers in good faith subsequent to the transfer.

The object of the statute is to require notice to the world of the transfer of personal property in order that creditors, and purchasers or encumbrancers in good faith, may be protected. It is designed to prevent fraud. It requires the surrender of control by the vendor and the assumption of possession by the vendee, and mere words are not sufficient to constitute the delivery contemplated. (*Dover Lumber Co.* v. *Whitcomb*, 54 Mont. 141, 168 Pac. 947; *Wells* v. *Esgar*, 72 Mont. 333, 233 Pac. 123.)

Ordinarily, as between the parties a delivery is not essential to complete a sale, but as to creditors and subsequent bona fide purchasers and encumbrancers it is absolutely indispensable. (Note to *Claflin* v. *Rosenberg*, 97 Am. Dec. 345.) Upon delivery to him the vendee must take actual, open and unequivocal possession of the property; the possession must carry with it "the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner." (*Stevens* v. *Irwin*, 15 Cal. 503, 76 Am. Dec. 500, quoted in *Dodge* v. *Jones*, 7 Mont. 121, 14 Pac. 707; *Taylor* v. *Malta Mercantile Co.*, 47 Mont. 342, 132 Pac. 549.)

It is the general rule that to defeat the claim of the creditor of the vendor the change of possession must be so open and so long continued as to indicate to the world at large that there has been a transfer of title. (*Puckett* v. *Hopkins*, 63 Mont. 137, 206 Pac. 422.)

"The vendor cannot be allowed to remain in the apparent sole and exclusive possession of the goods after the sale, for that would be inconsistent with such an open and notorious delivery and actual change as the statute exacts in order to exclude from the transfer the idea of fraud. Care should be taken, in such cases, to keep in view the object of the statute, and to exact nothing less than a substantial observance

of its salutary provisions." (*Center* v. *Kelton,* 20 Cal. App. 611, 129 Pac. 960.)

The determination of the question as to whether there has [4] been in any given case an immediate delivery and actual possession of the thing sold depends, in a measure, upon the character of the thing sold, the nature of the transaction, the position of the parties and the intended use of the property. (*Porter* v. *Bucher,* 98 Cal. 454, 33 Pac. 335.)

Each case must be determined on its own facts. Acts which will amount to a delivery will vary with the different cases, and will depend upon the character and quantity of the property sold. (*Western Mining Supply Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214, 105 Pac. 732.)

It is said that while it is difficult to lay down a general rule applicable to all cases, it is well settled that there must be an actual delivery whenever the nature of the property and the position of the parties render it practicable to make it.

A symbolical or constructive delivery cannot take the place of a real delivery, where the latter can reasonably be made. (Note to *Claflin* v. *Rosenberg,* supra.)

In view of these authorities, the correctness of which cannot [5] be doubted, the trial court was justified in deciding that there had not been a delivery followed by an actual and continued change of possession of the property sold sufficient to satisfy the terms of the statute. The delivery of the key to the granary did not in and of itself constitute an actual delivery. "Viewed in its most favorable aspect this circumstance was merely evidence of a constructive delivery and possession, whereas the law requires in every case, where the situation and nature of the property render it possible, that the change of possession must be visible, apparent and actual and not merely constructive." (*Guthrie* v. *Carney,* 19 Cal. App. 144, 124 Pac. 1045.)

It must be remembered that we are dealing here with fraud in law and not fraud in fact. (*Tomcheck* v. *Maryland Casualty Co.,* 75 Mont. 557, 244 Pac. 506.)

In the case before us nothing whatever was done to apprise the public of a change of possession. The granary was within a field which, before and after the transaction, was in the possession of the vendor. The vendee had no control over it. For eight months after the delivery of the key the situation, so far as the public was concerned, remained precisely as it had been before the key was delivered. Apparently the granary, within the homestead inclosure, was owned and controlled by Mrs. Lawrence, the possessor of the homestead. No good reasons are advanced to excuse the plaintiff from taking some action to apprise the public of its ownership of the wheat within the granary, or from taking actual possession of it.

The plaintiff relies upon *Western Mining Supply Co.* v. *Quinn, supra.* In that case the property involved was a warehouse and certain heavy mining machinery, lumber, and the like, stored therein. The testimony in that case disclosed that the warehouse was personal property, on leased land, and that the other property was contained in the warehouse at the time of the seizure. It further disclosed that when the vendor delivered to the vendee the key to the warehouse the vendor did not thereafter exercise any ownership or control over any of the property. The vendee thus had the ownership and exclusive control not only of the property within the warehouse but the warehouse itself. While the court said the evidence was meager, it held that, under the circumstances, the delivery by the seller to the buyer of the key to the warehouse was a sufficient delivery of the property to satisfy the statute. In doing so it recognized the doctrine that in cases where actual delivery and immediate possession are, by reason of the peculiar situation and bulky nature of the thing sold, impossible by ordinary means and methods, the strictness of the rule is relaxed to meet the exigencies of the case. (*Guthrie* v. *Carney, supra.*)

Commenting on the decision in the *Quinn Case,* in *Taylor* v. *Malta Mercantile Co.,* supra, Mr. Justice Holloway, who wrote both decisions said: "We do not know of any case where the rule of the statute has been given a more liberal construction." It cannot be extended to sustain the plaintiff's contention in this case.

All the facts and circumstances considered, the plaintiff in this case is no better off than was the plaintiff in the *Taylor Case,* in which the court refused to apply the doctrine of the *Quinn Case.* The facts in *Sharp* v. *Carroll,* 66 Wis. 62, 27 N. W. 832, referred to in the Quinn decision, are quite different from those here.

The judgment is affirmed.

*Affirmed.*

Associate Justices Myers, Stark, Matthews and Galen concur.