FORTMAN, RESPONDENT, *v.* LEGGERINI, APPELLANT.

(No. 3,403.)

(Submitted September 14, 1915. Decided September 30, 1915.)

[152 Pac. 33.]

*Statute of Frauds—Collateral Undertaking.*

Statute of Frauds—What Promises Within Statute, What not.
   1.   As a general rule, an oral promise by one person to pay for goods furnished to another is not within the statute of frauds, but such a promise to respond only after the failure of another is within the statute.
   [As to promises to pay the debt of another, see notes in 5 Am. Dec. 321; 95 Am. Dec. 251; 46 Am. Rep. 296; 126 Am. St. Rep. 487.]

Same—Collateral Undertaking.
   2.   Defendant, introducing two strangers to plaintiff, asked the latter to let them have what goods they wanted, and if they did not pay he would. *Held,* that defendant's promise was collateral, and therefore within the statute of frauds under the rule *supra.*
   [As to original on collateral nature of oral promise within the statute of frauds as a question of law or of fact, see note in Ann. Cas. 1915B, 257.]

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by C. H. Fortman against John Leggerini. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed and remanded, with directions.

*Messrs. Wight & Pew,* for Appellant, submitted a brief; *Mr. Chas. E. Pew,* argued the case orally.

*Mr. Edward Horsky,* for Respondent, submitted a brief and argued the cause orally.

The facts in evidence bring this suit within the case of *McGowan Com. Co.* v. *Midland Coal etc. Co.,* 41 Mont. 211, 108 Pac. 655. We respectfully submit that the evidence presented brings it squarely within the case of *Meldrum* v. *Kenefick,* 15 S. D. 370, 89 N. W. 863. In that case the defendant had a conversation with plaintiff with respect to building a house on a farm occupied by defendant's brother, and plaintiff told defendant he could not build it on the brother's account. Defendant thereupon told him to go ahead and "I will see that you get your money." It was held an original undertaking on defendant's part within the statute, though not in writing. The statute of South Dakota is the same as that of our section 5660. In that case this language of the court is noteworthy also: "It is true that the plaintiff spoke in some portion of his evidence of the defendant having 'guaranteed' the payment and that he requested the brother to pay it."

That the words used in the making of the promise do not stand alone, but all of the circumstances must be considered by the jury along with the language employed, see *Davis* v. *Patrick,* 141 U. S. 479, 35 L. Ed. 826, 12 Sup. Ct. Rep. 58; *Boston* v. *Farr,* 148 Pa. 220, 23 Atl. 901; *Brown* v. *Harrell,* 40 Ark. 429; *Maddox* v. *Pierce,* 74 Ga. 838; *Doyle* v. *White,* 26 Me. 341, 45 Am. Dec. 110; *Cheever* v. *Schall,* 87 Hun, 32, 33 N. Y. Supp. 751; *Foster, Charles & Ewen Co.* v. *Felcher,* 119 Mich. 353, 78 N. W. 120; *King* v. *Franklin Lumber Co.,* 80 Minn. 274, 83 N. W. 170; *Nesbitt* v. *Pioche Consol. Min. & R. Co.,* 22 Nev. 260, 38 Pac. 670; *Herendeen Mfg. Co.* v. *Moore,* 66 N. J. L. 74, 48 Atl. 525; *Hall* v. *Alford,* 105 Ky. 664, 49 S. W. 444; *Nixon* v. *Jacobs,* 22 Tex. Civ. App. 97, 53 S. W. 595.

MR. JUSTICE SANNER delivered the opinion of the court.

This action originated in the justice's court of Helena township. The plaintiff filed as his complaint an account showing a balance for goods, wares and merchandise "sold to Stagnoli & Guidi, guaranteed by John Leggerini." The defendant answered in writing, denying any indebtedness to the plaintiff, and specifically denying that he had guaranteed the payment of any sum of money to the plaintiff for or on account of Stagnoli & Guidi. On these pleadings the cause was tried before the justice of the peace, as also in the district court, whither it came on appeal. The trial in the district court resulted in a verdict and judgment for the plaintiff, and from that judgment as well as from an order denying his motion for new trial, the defendant has appealed to this court. His principal contention is that upon the evidence presented he was entitled to prevail as a matter of law.

The transaction upon which it is sought to hold the defendant was oral, and the case made in support of the judgment consists of the testimony of the plaintiff (Mr. Fortman), that of his bookkeeper (Mr. Holt), and certain exhibits. Mr. Fortman testified that: About April 8, 1912, the defendant, an old customer, came to his place of business with two strangers named Stagnoli and Guidi who wished "to purchase some machinery. After introducing the gentlemen to me, Mr. Leggerini said to let them have what they wanted, and he would see that it was paid for, and, if they did not pay, he would. As a result of that conversation and that statement by Mr. Leggerini I let the gentlemen have some goods. * * * I rendered a bill and charged the goods up to Mr. John Leggerini." These goods were gotten on eight different occasions. With every purchase plaintiff delivered a sale slip stating the items furnished, with their prices, and each of these slips was headed: "Name, A. Stagnoli. Address, Leggerini"; or "Name, Antone Stagnoli. Address, Leggerini." On the indebtedness thus incurred Stagnoli or Guidi paid $21.55, leaving the balance sued for. Touching this, the plaintiff says: "I was never able to get any pay-

ment from Stagnoli & Guidi, although I attempted to do so. I made demand on them more than once. After trying to get payment from Stagnoli & Guidi, I tried to collect of Mr. Leggerini." In the course of his efforts to collect from Stagnoli & Guidi, plaintiff on December 9, 1912, took a vendor's lien note from Guidi, who was then in sole possession. Learning afterward that the chattels of Stagnoli & Guidi were being seized under a mortgage to Leggerini, plaintiff made demand for the articles mentioned in the note, but did not pursue that remedy further upon being told by counsel for Leggerini that failure to file the note rendered it valueless as a lien. Recalled after motion for nonsuit the plaintiff added: "When Mr. Leggerini brought those two men in there, he said he had leased them a piece of his ground, and they wanted some goods and machinery * * * to work on this ground that he had leased to them." Being asked to whom he "looked for payment of the goods furnished to Stagnoli," he answered: "John Leggerini."

Mr. Holt testified that the defendant, when presenting Stagnoli and Guidi at plaintiff's store, said: "They are strangers here. They are all right. Let them have what they want, and they will pay for it, and if they do not pay for it, I will." The goods were charged to Leggerini, and bills were mailed to him monthly up to July 1, when he appeared and said: "I don't want to get their account mixed up with mine. You have got that stuff charged to me. Take it off my account and open up an account with them, and if they don't pay for it, I will." In consequence of this Mr. Leggerini was credited with the amount of these items which were then charged to Stagnoli & Guidi.

The exhibits consist of: (1) The sale slips above referred to; (2) and (3), debit cards, part of plaintiff's system of bookkeeping, containing charges to John Leggerini and including items listed as "Stagnoli & Guidi" or "Stagnoli"; (4) debit cards headed, "Name. Antone Stagnoli. Recommended by Leggerini," and containing all the charges involved in this action;

(5) the account as filed in the justice's court; and (6) the vendor's lien note mentioned above.

At the close of this evidence the defendant renewed his motion for nonsuit, the general grounds of which were that the complaint pleads a guaranty, not an original obligation, and that the evidence shows no original obligation, but a guaranty, which, being oral, is within the statute of frauds. This was overruled, and the defendant then introduced evidence tending to show that he had neither incurred nor guaranteed the indebtedness in question. As a part of defendant's evidence there was also introduced a letter to him by counsel for plaintiff, dated March 13, 1913, demanding that the defendant "pay the balance due on the account of the purchase of certain merchandise made by Stagnoli & Guidi, which was guaranteed by you."

The plaintiff concedes that upon the language of Leggerini alone an oral, and therefore invalid, promise to answer for the debt, default, or miscarriage of another is shown; but, claiming the authority of *McGowan Com. Co.* v. *Midland Coal & Lumber Co.*, 41 Mont. 211, 108 Pac. 655, he asserts that the transaction, viewed in the light of the circumstances, constitutes an original indebtedness on the part of defendant for which recovery may be had. We think it perfectly clear from the record that the whole course of the litigation up to the time the motion for nonsuit was made proceeded upon the theory of guaranty, and whether the plaintiff, after pleading and trying his case upon that theory, can now vindicate the judgment as for an original obligation, is, to say the least, open to serious doubt. Assuming, however, that he may, we do not think that the *McGowan Case* affords any warrant for the present judgment. In that case the facts were that one Gibson, who had a contract with the lumber company to move some logs belonging to it, sought credit of the McGowan company and was refused. An officer of the McGowan company informed Mr. Clark, the manager of the lumber company, of this, saying: "Mr. Gibson has applied to us for credit to carry on his logging operations, and we have decided we cannot give him any credit, as we do not think him good."

To which Mr. Clark said: "You don't; am I good?" Mr. Mc-Gowan said: "You certainly are." And Clark said: "All right; you let Gibson have what he requires, what he needs, and I will see that it is paid, and you keep our office notified from time to time what the amount is." This language was at least equivocal. The inference from it that Clark intended to bind the lumber company originally was certainly as permissible as that he intended it to act only as a guarantor. Resort to evidence *aliunde* and a judgment for the plaintiff on all the facts were therefore held proper, under the rule stated in 20 Cyc. 164, as follows: "It is often difficult to determine from the mere words in which a promise is made whether an undertaking is collateral to the engagement or liability of a third person, or an entirely independent and original undertaking. In such cases courts must rely on the circumstances of each particular case and its general features in order to ascertain the intent of the parties, and how they viewed it, when it is doubtful whether it was a contract of suretyship or guaranty or an original undertaking." And it was with reference to this rule that this court said: "Whenever from the language employed by the promisor reasonable men might draw different conclusions or inferences, then the intention of the parties at the time the promise was made becomes a subject of legitimate inquiry."

We do not understand, however, that where the language used [1] is clear and unequivocal, where it is such that by immemorial usage and common consent it has but one meaning, there is anything for the circumstances to aid. Generally speaking, an unwritten promise to respond in the first place is not within the statute; but an unwritten promise to respond only after the failure of another is within the statute. (*Jones* v. *Cooper,* 1 Cowp. 227; *Peckham* v. *Faria,* 3 Doug. 13.) In the [2] present case the words of the defendant were perfectly clear. "If they don't pay, I will," can mean nothing else than that he should respond only after default by Stagnoli & Guidi. It is settled law in this state that, whenever one person introduces another to a merchant as a prospective customer and agrees

to pay for such goods as the customer may purchase, in case the latter does not, the agreement is collateral, and, if not in writing, is void. (*Kalispell Liquor Co.* v. *McGovern*, 33 Mont. 394, 84 Pac. 709.)

The plaintiff invokes as a rule the proposition that, "when the statute of frauds is involved, the primary question is: To whom was credit given?" and he contends that, because he says he looked to the. defendant, his case is made. The question, "To whom was credit given?" is often important where the language is indecisive, but even then the inquiry is whether the credit was given solely to the promisor, and whether the promisee had the right to do so. (Wood on the Statute of Frauds, sec. 98.) "In all such cases it is requisite that credit should be given exclusively to the promisor; if any credit be given to him for whose benefit the promise is made, the promisor is not liable unless his promise is in writing, and this is so although the collateral undertaking may have been the principal inducement to the delivery of the goods." (20 Cyc. 181; *Mc-Gowan Com. Co.* v. *Midland Coal & Lumber Co., supra.*) These qualifications are necessary, for the statute is not to be annulled by applying the rule of "credit given" in a case where it was erroneously given or in a case of undoubted guaranty, merely because without such guaranty the sale would not have been made.

Our Code defines the conditions upon which a promise to answer for the obligation of another may be deemed the original obligation of the promisor. So far as pertinent here, they are: "Where the creditor parts with value, * * * in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety." (Rev. Codes, sec. 5660.) By virtue of what can it be said that Stagnoli & Guidi became sureties for Leggerini in the purchases here involved? To draw any such inference from the terms themselves would be an extravagant perversion of language. Assuming, however, that under this statute an inquiry into the circumstances may be had, even

though the terms be clear, the record discloses nothing to overcome the plain purport of the language imputed to Leggerini, and upon which the plaintiff for the most part consistently acted, *viz.*, that Leggerini should pay if the others did not.

It is our opinion that the plaintiff's evidence presents a collateral undertaking which was not in writing, and the motion for nonsuit should have been sustained. The judgment and order appealed from are therefore reversed, and the cause is remanded, with directions to enter judgment for the defendant.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

